UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Nicole Streker, | Case No. 23-cv-1522 (KMM/DTS) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Michael Segal, Warden, | |
| Respondent. | |

---

Petitioner Nicole Streker brought a habeas petition under 28 U.S.C. § 2241 seeking immediate application of earned time credits under the First Step Act of 2018 (FSA). Dkt. No. 1. Because Streker has not exhausted her administrative remedies, the Court recommends her petition be dismissed without prejudice.

## FINDINGS OF FACT

Streker is currently incarcerated at the Federal Correctional Institution in Waseca, Minnesota (FCI Waseca). Dkt. No. 1. Streker was sentenced to 108 months of incarceration on February 26, 2020, on one count of possession with intent to distribute methamphetamine under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).[1]

On April 12, 2023, Streker filed an Administrative Remedy request with FCI Waseca, requesting application of her time credits under the FSA, which was denied. Dkt. No. 1 at 3. Streker appealed the denial to the Warden of FCI Waseca on April 28, 2023. Dkt. No. 1-1 at 3. The Warden denied Streker's request on May 5, 2023, because she was classified as a "medium" recidivism risk level. *Id.* The Warden instructed Streker to

---

[1] While not provided in the record before the Court, the Court takes judicial notice of this fact as a matter of public record in the Western District of Missouri criminal case no. 4:17-00377-01-CR-W-RK.

submit form BP-A0140 to petition for her time credits be applied despite her medium recidivism risk. *Id.* Streker appealed the Warden's denial of her administrative remedy request to the Regional Officer of the Federal Bureau of Prisons on May 9, 2023. *Id.* at 4.

Streker filed this petition on May 24, 2023, seeking immediate application of her earned time credits and alleging her recidivism risk had been reduced from "medium" to "low." Dkt. No. 1-3 at 4. Streker reported her second appeal was pending when she filed this petition. *Id.*

## CONCLUSIONS OF LAW

### A. Failure to Exhaust Administrative Remedies

Prior to filing for habeas relief in federal court, an inmate must ordinarily exhaust her administrative remedies. *United States v. Chappel*, 208 F.3d 1069, 1069-70 (8th Cir. 2000); *Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974). By requiring exhaustion of the prison's administrative grievance procedures, courts avoid "toppl[ing] over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)). That said, exhaustion is not jurisdictional, and courts may hear unexhausted grievances where proceeding with the remedies process would be futile. *E.g.*, *Raymond v. Bd. of Regents of the Univ. of Minn.*, 847 F.3d 585, 591 (8th Cir. 2017). "In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).

The Administrative Remedy Process (ARP) detailed in 28 C.F.R. § 542.10–19 applies to FCI Waseca as an institution operated by the Federal BOP. 28 C.F.R. § 542.10. The ARP includes four essential steps. First, inmates must seek informal resolution of their grievance; informal grievance procedures are set by the prison warden. *Id.* at § 542.13. Second, if no informal resolution is met, inmates then must complete the appropriate form, a BP-9, and submit it to the warden. *Id.* at 542.14(a). Third, if an inmate is unhappy with the warden's response to the BP-9, appeal to the Regional Director is available. *Id.* at 542.15. Fourth, appeal to the BOP's Central Office is available where an inmate is dissatisfied with the Regional Director's disposition of the grievance. *Id.*

Streker failed to exhaust her administrative remedies, because she filed this petition while her appeal to the Regional Director was pending. Thus, Streker brought this petition while the third step of the ARP was incomplete, and the fourth step—appeal to the BOP's Central Office—had yet to be initiated. This is insufficient to exhaust her administrative remedies, and Streker's petition should be dismissed without prejudice on this ground. *See Mathena v. U.S.*, 577 F.3d 943, 944 (8th Cir. 2009); *see also Settle v. Bureau of Prisons*, 2017 WL 8159227, at *2 (6th Cir. 2017) ("Where it is apparent from the face of a § 2241 petition that a petitioner did not exhaust administrative remedies, the Court may *sua sponte* dismiss the petition without prejudice.").

While not necessary to the disposition of this petition, the Court notes that Streker appears presently ineligible for application of time credits under the FSA. In the interest of judicial economy—because the Court recognizes Streker may file a subsequent petition asserting the same claims following exhaustion of her administrative remedies— the Court will clarify the applicable law below.

3

**B. Eligibility for Application of Time Credits**

Streker is likely currently ineligible to apply time credits to her sentence based on both a misunderstanding of the applicable law and a miscalculation of her earned time credits.[2] Under the FSA, inmates are encouraged to participate in "evidence-based recidivism reduction programs" through various incentives. 18 U.S.C. § 3632(d). These incentives include earning an earlier transfer into pre-release custody or supervised release. 18 U.S.C. § 3632(d)(4)(A). Earlier transfer into pre-release custody or supervised release occurs when an eligible inmate's earned time credits are applied to his or her sentence. Whether an inmate is eligible to have their time credits applied under the FSA is determined by the following criteria:

> **(1) Eligible prisoners.**--This subsection applies in the case of a prisoner (as such term is defined in section 3635) who--
> **(A)** has **earned time credits** under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") **in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment**;
> **(B)** has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;
> **(C)** has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and
> **(D)(i)** in the case of a prisoner being placed in prerelease custody, the prisoner--
>> **(I)** has been determined under the System to be **a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner**; or
>> **(II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison**, after the warden's determination that--
>>> **(aa)** the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

---

[2] Because the Court is dismissing Streker's petition *sua sponte* for failure to exhaust her administrative remedies, the record does not contain documents from the BOP that would allow the Court to make this factual determination. Such information includes, but is not limited to, information confirming Streker's projected release date, how many days of time credit Streker has earned, and whether Streker has completed other programs that provide cumulative relief with the FSA.

4

> > **(bb)** the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and
> > **(cc)** the prisoner is unlikely to recidivate; or
> 
> **[D](ii)** in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C. § 3624(g) (emphasis added).

First, Streker appears to misunderstand that a single low recidivism risk assessment is not sufficient to confer eligibility under the FSA in her case. As detailed above, inmates must receive two consecutive low or minimum risk assessments to be eligible for time credit application under 18 U.S.C. § 3624(g)(1)(D)(i)(I). Assuming Streker was reassessed and assigned a low risk assessment score during the 19-day span between the Warden's letter (which confirmed Streker's medium risk level) and this petition, it would nonetheless constitute her *first* low risk assessment. This falls short of the consecutive risk assessment requirement under 18 U.S.C. § 3624(g)(1)(D)(i)(I). There are two exceptions to this requirement, but the record suggests neither exception applies at this time.[3] *See* 18 U.S.C. §§ 3624(g)(1)(D)(i)(II) and 3624(g)(1)(D)(ii).

Second, it is apparent that Streker is miscalculating her time credits based upon the number of programs completed—commonly referred to as "program stacking"—rather than the number of days spent in eligible programming. Dkt. No. 1-1 at 5. "Congress made

---

[3] This first exception applies where an inmate petitioned for and received discretionary approval from the Warden. 18 U.S.C. § 3624(g)(1)(D)(i)(II). The second exception applies where an inmate is being transferred specifically into supervised release after one low risk assessment. 18 U.S.C. 3624(g)(1)(D)(ii). Streker has not alleged she petitioned for, let alone received, discretionary approval from the Warden. Additionally, because Streker was sentenced to nine years of incarceration in February 2020, even if it were possible for Streker to have earned enough time credits to be entitled to release now, credits in excess of 12 months only apply to prerelease custody. Thus, the exception allowing for transfer to supervised release after only one low risk assessment could not apply, as she would necessarily be transferred to prerelease custody first.

5

clear that a prisoner earns First Step Act Time Credits based on the number of days in which they participate in eligible programs, not the number of eligible programs in which they participate." *Dale v. Hawkins*, 2023 WL 2601215, at *5 (S.D. Tex. Mar. 22, 2023). Section 3632(d)(4)(A) does not require that the BOP award credits for each *program* completed. Instead, inmates "shall earn . . . time credits for every 30 days of successful participation in evidence-based recidivism reduction *programming*." 18 U.S.C. § 3632(d)(4)(A)(i) (emphasis added). *See, e.g., Rice v. Segal*, No. 23-CV-0751, Dkt. No. 6 (D. Minn. Apr. 24, 2023); *see also Sisson v. Segal*, No. 23-CV-0548, Dkt. No. 5 (D. Minn. Apr. 14, 2023). Accordingly, time credits under the FSA are awarded based on days spent in programming, rather than the number of programs attended. *See* 28 C.F.R. § 523.42(c)(1) ("For every thirty-day period that an eligible inmate successfully participates in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, the inmate will earn ten days of FSA Time Credits.").

To illustrate how to appropriately calculate time credits under the FSA, the Court will provide an approximate calculation.[4] The earliest date Petitioner reports participating in FSA eligible programming is July 22, 2020. Dkt. No. 1-1 at 5. Eligible inmates earn 10 days of time credit per 30-day period they participate in eligible programming until they have two consecutive low or minimum risk assessments, at which point they earn 15 days of time credit per 30-day period. Petitioner asserts her risk level was reduced from medium to low sometime in mid-May, 2023. Therefore, Streker would have earned 10 days of time credit per 30-day period as an inmate who had not had two consecutive low risk assessments.

---

[4] This calculation does not constitute a factual finding, because the record before the Court does not contain all information pertinent to time credit eligibility.

6

There are 34 30-day periods between August 19, 2020 and May 24, 2023, the date Streker filed this petition. Assuming Streker was eligible to earn credits and participating in eligible programming for the entirety of those 34 30-day periods, Streker would have earned 340 days of time credit when she filed this petition, rather than the 2,850 days of time credit Streker asserted she had earned in her petition.

An inmate is only eligible to have her time credits applied when she has earned time credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. 3624(g)(A). Considering Streker was sentenced to nine years of incarceration in February 2020, it is likely her earned time credits do not currently equal the remainder of her sentence, which would render her ineligible for application of her time credits. *Ronald David Johnson v. B. Eischen,* 2023 WL 2563148 (D. Minn. Feb. 22, 2023) ("[A] prisoner is eligible to have earned time credits applied…only when he has earned time credits that equal the remainder of his sentence. At that time, the credit can immediately be applied and would no longer be subject to loss for future prohibited acts.") (citation omitted). Accordingly, the Court advises Petitioner to consider whether she is eligible under the law for application of her time credits before filing a subsequent petition, should she exhaust her administrative remedies.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT:

1. The petition for a writ of habeas corpus of petitioner Nicole Streker [Dkt. No. 1] be **DENIED** for failure to exhaust administrative remedies.

2. This matter be **DISMISSED** without prejudice.

Dated: June 30, 2023               s/David T. Schultz   
                                                                       DAVID T. SCHULTZ
                                                                       U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).